# EXHIBIT 2

 **PRAXIS** energy agents

Worldwide Marine Oil Suppliers

---

**GENERAL TERMS AND CONDITIONS FOR THE SALE OF MARINE BUNKER FUELS AND LUBRICANTS**

---

<u>EFFECTIVE FROM DECEMBER 29TH 2017</u>

1.00   **INTRODUCTORY**   These terms and conditions, which can be found also at www.praxisenergyagents.com are the general standard terms and conditions under which each of the companies stated in the Schedule below (each one hereinafter referred to herein as the "Company" is prepared to enter agreement (the "Agreement") with another party (the "Buyer") to supply to the Buyer marine bunkers, and/or lubricants and/or other products.  These terms and conditions are referred to herebelow as "these Conditions". Each Agreement for the sale of Products (as hereinafter defined) shall be governed by the specific terms negotiated and agreed between the Company and the Buyer as evidenced by the Company's nomination confirmation  sent by facsimile or e-mail message (the "Nomination Confirmation") and by these Conditions; in the event of any conflict between these Conditions and the terms of the Nomination Confirmation, the terms of the latter shall prevail.

2.00   **DEFINITIONS**
2.01   **Agreement**  As defined in Clause 1.00 above.
2.02   **Basic Cost**  The basic cost of Product calculated by multiplying the Unit Price by the quantity of Product delivered to the Vessel.
2.03   **Nomination Confirmation**  As defined in clause 1.00 above.  The Nomination Confirmation dispatched by the Company prior to delivery and not contested in writing by the Buyer clearly before the delivery of the Product to the Vessel, shall be conclusive evidence, among others, of (i) the order for the Product placed by the Buyer, (ii) the identity of the Buyer and (iii) the price and other details of the delivery of the Product. All the party(ies) stated in the relevant Bunker Nomination as buyer(s) shall be deemed to be the Buyer of the respective Product on a joint and several basis, without prejudice to the other terms and conditions of this Agreement.
2.04   **Buyer**  Jointly and severally, in any event the registered and the disponent owner of the Vessel, including any lessor and (as the case may be) the manager of the Vessel, her demise/bareboat charterer, lessee and any other party which has contracted with the Company for the particular supply of Product and is stated as a buyer in the Nomination Confirmation. The manager of a Vessel shall, unless it otherwise expressly advises the Company in writing before the latter despatches its Nomination Confirmation, be deemed as acting for the owner of the Vessel and on its own behalf, on a joint and several basis.
2.05   **Company**  Includes in addition to the Company itself, its servants, agents, assigns, sub contractors, and any and all other persons acting under the Company's instructions in fulfilment, compliance or observance of this Agreement, unless the context otherwise requires.
2.06   **Delivery**  As defined in Clause 8.00 below.
2.07   **Due Date**  The date specified in the Nomination Confirmation for payment of the Price and all other fees, costs, charges and like items.
2.08   **Gender, Singular and Plural**  Unless the context otherwise requires, all references in these Conditions  to one gender shall be deemed to include all others and references to the singular shall be deemed to include the plural vice versa.
2.09   **Physical Supplier**  The party which physically supplies the Product to the Vessel together with that party's servants, agents, successors, sub-contractors and assigns.  The Physical Supplier may be the Company or any other party whatsoever.
2.10   **Port of Supply**  The port or other readily identifiable geographical location specified in the Nomination Confirmation wherein or adjacent to which is the Point of Delivery.
2.11   **Point of Delivery**  The precise place at which Delivery is to be effected as provided  in the Nomination Confirmation or as thereafter confirmed, advised or revised by the Company or the Physical Supplier being a berth, mooring, anchorage or other point within, adjacent to or associated with the Port of Supply.
2.12   **Price**  As defined in Clause 11.00 below.
2.13   **Product**  The fuels, bunkers, oils, lubricants, goods, items, equipment  and materials of whatever type and description as specified in the Nomination Confirmation.
2.14   **Unit Price**  The rate of cost in United States Dollars (or such other currency as expressly specified in the Nomination Confirmation) per metric tonne (or such other unit of measurement as expressly specified in the Nomination Confirmation) or Product as specified in the Nomination Confirmation.
2.15   **Vessel**  The vessel, ship or craft duly nominated to receive Product as specified in the Nomination Confirmation.
2.16   **Written, in Writing and Notice**  Any requirement for written communication including the giving of any notice may be fulfilled by the use of letter-post, courier,  facsimile transmission or any other medium which produces a tangible result for the intended recipient.  The communication shall be deemed to have been given and received upon completion of transmission for any electrical or electronic medium, within two working days of dispatch for first class inland letter-post, within five working days of dispatch for second class inland letter-post and air mail and on the expiry of the declared or guaranteed time for delivery of any courier or monitored service.

3.00     **HEADINGS**  The use of headings and explanatory notes is for convenience and elucidation only.

4.00     **ENTIRETY AND VALIDITY**  These Conditions together with the Nomination Confirmation constitute the entire Agreement.  No derogation, addition or amendment to the Agreement shall be of any force or effect unless and until expressly confirmed in writing by the Company.  If any provision of the Agreement shall to any extent  be invalid or unenforceable  the remainder of the terms of the Agreement shall not be affected thereby.

5.00     **FORCE MAJEURE**  The Company shall not be liable for any failure to fulfil any term or condition of the Agreement if fulfilment has been delayed, hindered or prevented by any circumstances whatsoever which are not within the immediate control of the Company including but without limiting the generality of the foregoing, any strike, lockout or labour dispute or reasonable apprehension thereof, any governmental order, request or restriction, any limitation restriction or interruption to existing or contemplated sources of  supply of Product or the means of supply thereof.

6.00     **BROKERS AND AGENTS**
6.01     Unless the party with whom the Company is corresponding specifically declares to the Company prior to dispatch by the Company of the Nomination Confirmation that the party with whom the Company is corresponding is not the Buyer and at the same time provides to the Company the full name and address of the Buyer, then the party with whom the Company is corresponding shall be deemed to be the Buyer.
6.02     Without prejudice to the provisions of clause 6.01 in the event that the party with whom the Company is corresponding is an agent of the Buyer, then the party with whom the Company is corresponding shall be jointly and severably liable with the Buyer to perform all the Buyer's obligations under the Agreement notwithstanding that the party with whom the Company is corresponding purports to contract as a mere agent.
6.03     In any event the registered and disponent Owners and the Managers of the Vessel shall always be responsible jointly and severally with any other liable party.

7.00     **ASSIGNMENT**  The Buyer shall not assign its interest (rights and/or obligations) in the Agreement without the prior express written approval of the Company.  The Company may assign its rights and/or obligations under the Agreement and shall thereafter give notice thereof to the Buyer in writing.

8.00     **DELIVERY**
8.01     **Allocation**  If the Company at any time and for any reason, believes that there may be a shortage of Product at the Port of Supply it may allocate its available and anticipated supply of Product among its Buyers in such a manner as it may in its absolute discretion determine.
8.02     **Restrictions**  The Company shall not be required to deliver Product into any of the Vessel's tanks or other places which are not regularly used for storage of bunkers or lubricants or other products as the case may be and shall not be required to deliver any Product for the export of which a Government permit is required and has not been obtained by the Buyer.
8.03     **Means of the Delivery**  Delivery shall be effected in one or more consignments at the Point of Delivery by such means as the Company shall deem appropriate in the circumstances.
8.04     **Barging**  In the event of delivery by barge, the Buyer shall at its own expense provide a clear and safe berth for the barge(s) alongside the Vessel's receiving lines and shall provide all necessary facilities and assistance required to effect delivery.  The Buyer agrees to pay and fully indemnify the Company against all claims and expenses in respect of any loss, damage or delay caused by the Vessel to any barge and/or its equipment.
8.05     **Connection**  The Buyer shall make connection between the pipelines or delivery hoses and the Vessel's intake line and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly each and every consignment of the Delivery.  The Buyer is responsible for ensuring that the Product  is delivered at a safe rate and pressure and that all equipment utilised therefor is in a safe and satisfactory condition.
8.06     **Title/Retention of Ownership**   Delivery shall be deemed complete when the Product has passed the flange connecting the Physical Supplier's delivery facilities with the receiving facilities provided by the Buyer.  However, the ownership of the Product  shall pass to the Buyer only after the Price has been received by the Company in full as provided in Clause 12.01.  Until such time as the Price  is received in full by the Company, the person in possession of the Product delivered shall hold the Product for the Company as a mere bailee, without charging any charges whatsoever to the Company and store it in such way so that it can be identified as the Company's property; the Product shall remain on the Vessel at Buyer's sole risk and expense.
8.07     **Risk**  The Company's responsibility for the Product shall cease and the Buyer shall assume all risks and liabilities relating thereto, including loss, damage, deterioration, depreciation, contamination, evaporation or shrinkage of Product and responsibility for loss, damage and harm caused by pollution or in any other manner to third parties at the time Product leaves the Physical Supplier's fixed depot or wharf  facilities.  The Buyer agrees to fully indemnify without limit the Company in respect of any liability, claim or demand for which the Buyer is liable.
8.08     **Measurement**  The quantity of the Product delivered hereunder shall be determined at the Physical Supplier's option by one of such generally recognised methods of measurement as is appropriate in the circumstances.
8.09     **Specification**  The Product to be delivered shall be as specified in the Nomination Confirmation and other than as more precisely specified therein shall be of the Company's commercial grades of Product as currently offered generally to its Buyers at the time and the Point of Delivery for marine bunkering or lubrication purposes.  No other warranties, express or implied, as to the quality or the fitness of the Product for any purpose, are given or form part of the Agreement.

**8.10     Compatibility and Segregation** Responsibility for establishing compatibility  of the Product delivered with any other product or products and for segregating or co-mingling the same rests solely with the Buyer.

**8.11     Substitution**  The Company may discharge its obligation to deliver Product as specified in the Nomination Confirmation by supplying in substitution  therefor product of a different grade and/or  brand name provided always that such substitute product is of an equivalent or superior specification to that specified in the Nomination Confirmation.

**8.12     Availability**  Subject to the availability of Product, the availability of facilities at the Port of Supply and Point of Delivery and the customary priority of  mail vessels and tankers, and to the Buyer giving notice in accordance with Clause 8.15, the Company will use its best endeavours to ensure that the Product is delivered promptly upon the Vessel's arrival but the Company shall not be responsible for any loss, expense, damage or increased costs incurred in consequence  of the Vessel not being supplied promptly or otherwise being delayed or restrained  for any reason whatsoever.

**8.13     Time**  The Buyer is responsible for ensuring that  the Vessel is ready to receive the Product at the Point of Delivery on the expiry of the notice given in accordance with Clause 8.15.

**8.14     Delay**  In the event that the Vessel's arrival at the Point of Delivery is delayed or likely to be delayed the Buyer must so advise the Company without delay.  The Buyer should also ensure that the Vessel's agent at the Port of Supply  is similarly informed and that the agent advises the  Physical Supplier accordingly and without delay.  At the Buyer's request the Company will use its best endeavours to supply a delayed Vessel on the terms originally agreed but reserves the right to pass on to the Buyer all additional costs including increased Basic Cost arising from the Vessel's delayed  arrival.

**8.15     Notice and Other Delivery Requirements**  The Buyer must give not less than 72 hours notice (excluding Saturdays, Sundays, holidays and other non-working days at the Port of Supply) of the Vessel's readiness  to receive Product to the Company and to the Physical Supplier.  Notice must be given during the Company's normal business hours (Monday to Friday inclusive, 0900-1700 Local time).  Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter.  Furthermore it is in all circumstances and on all occasions the responsibility  and duty of the Buyer to ascertain and where appropriate to comply with:

1. the precise requirements of the Physical Supplier and any other person, body or authority in respect of the giving of notice of the Vessel's time of arrival at the Point of Delivery.
2. the exact location of the Point of Delivery
3. any particular requirements to enable Delivery to be effected as efficaciously as possible

The Buyer is advised to instruct its agent at the Port of Supply to liaise with the Physical Supplier so as to ensure compliance with these provisions.

**8.16     Information**  In response to a specific request for information from the Buyer in respect of the Point of Delivery  the Company will use its best endeavours to obtain or provide the information requested.  Whilst every care will be taken to ensure that  such information is accurate and up-to-date it is  furnished on the strict understanding that It is  not a contractual representation and that no responsibility whatsoever will attach to the Company for its accuracy and veracity.

**8.17     Environmental Protection**  Without prejudice to Clause 8.07 the Company may at any time without notice take any steps which it considers necessary to protect the environment from damage arising from spillage or transport of Product.  Any action so taken shall be on behalf of and at the expense of the Buyer.

**9.00     CANCELLATION AND BREACH**  In the event of the Buyer at any time cancelling a request for Product or the Vessel failing to take delivery of part or all of the requested Product the Company shall have the right to pursue a claim against both the Buyer and the Vessel for all loss and damage thereby suffered including loss of profit.  The Company may treat any other breach by the Buyer of any express term of the Agreement as a breach of a condition and it may at its discretion thereupon accept the breach, treat the Agreement as repudiated and seek such remedies as it considers appropriate.  So however that the provisions of Clauses 15.01,16.01 and 17.01 shall survive the determination of the Agreement in any event.

**10.00     MARITIME LIEN**   Where Products are supplied to a Vessel, in addition to any other security, the agreement is entered into and the Products are supplied upon the faith and credit of the Vessel. It is agreed and acknowledged that the sale of Products to the Buyer and/or their acceptance on the Vessel create a maritime lien over the Vessel for the price of the Products, such maritime lien afforded to the Company over the Vessel. In any event any applicable Law shall not prejudice the right of the maritime lien of the Company afforded hereunder or by any other applicable Law, be it of the place of delivery, of the flag of the Vessel, of the place of jurisdiction, and/or of an arrest of the Vessel, or otherwise howsoever. In case the Buyer is not the owner of the Vessel, it hereby expressly warrants that it has the authority of the owner to pledge the Vessel's credit and create a lien upon her as aforesaid and that he has given notice of the provisions of this Clause to the owner.  The Company shall not be bound by any attempt by any person to restrict, limit or prohibit its lien or liens attaching to a Vessel, either by clausing the Physical Supplier's delivery receipts or otherwise.

**11.00     THE PRICE**

**11.01     Unit Price**  Where in the Nomination Confirmation the Unit Price is stated to be not subject to variation the Unit Price will, subject to clause 8.14, not be varied.  In all other cases having agreed the Unit Price of the Product the Company will endeavour to refrain from making any increase.  However , the cost of marine bunkering products is volatile and the Company therefore reserves the right to increase the Unit Price at any time before delivery.  Notice of the increase will be given during the Company's normal business hours (Monday to Friday inclusive,

0900-1700 Local time).  Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter.  In such event the Buyer may forthwith give written notice to the Company of cancellation of the Agreement.  If no such notice is received within one hour of the Company advising the Buyer of the increase of the Unit Cost the Buyer shall be deemed  to have agreed to the revised Unit price and the Agreement so revised shall remain in full force and effect.

11.02    **Further Costs**  In addition to the Basic Cost  of the Product the Buyer agrees to pay for any charges raised in respect of taxes of any kind, freight, barge, vehicle, wagon or clean up costs including overtime or other like payments; insurance; pilotage; port dues  and any and all other like costs and expenses incurred by or charged to the Company.  Such charges, costs and expenses will be passed on to the Buyer at the rates charged to the Company as and when they are advised to the Company and together with the Basic Cost shall for all purposes constitute the Price due from the Buyer to the Company for the Product supplied.

The contracted prices are duty free only on the basis that the nominated vessel previous and next port of call are outside of the country; If the vessel calls an additional internal port prior to or after bunkering the prices will be adjusted substantially higher to cover the applicable duty;

11.03    **Notice of the price**   The Company will give notice of the Price to the Buyer as soon as reasonably practicable after Delivery.  In certain circumstances the Company will give notice of the Price in instalments. Where notification of the Price is given in instalments each element of the Price so notified shall when due constitute an enforceable debt due from the Buyer to the Company.  Notice of the Price may at the Company's option be provided by invoice sent by post or telex or as otherwise provided herein or as agreed.

11.04    **Proof of delivery**   The Buyer or its representative should attend Delivery and obtain at that time all outstanding information relating to Delivery including the exact quantities and precise specification of the Product delivered.  Unless otherwise requested by the Buyer prior to despatch by the  Company of the Nomination Confirmation the Company shall be under no obligation at any time to produce to the Buyer any evidence of delivery to the Vessel.  It is expressly agreed that the furnishing by the Company of proof of Delivery is not a pre-requisite to payment of the Price.

12.01    **PAYMENT**    In most cases special payment terms will have been agreed and will be set  out in the Nomination Confirmation.   Each of the following terms apply unless the Nomination Confirmation otherwise provides:

1. Payment of  the Price will be made in United States dollars to the bank and account specified in the Nomination Confirmation and the Company's Invoice ("Invoice") in full without deduction for any reason whatsoever so as to ensure that the Company receives  value for the payment in cleared funds on or before the Due Date or such earlier date in the case of Clause 12.01.8.
2. The Due Date is as provided in the Nomination Confirmation.
3. Timely payment is of the essence of the Agreement.
4. In the event of the Buyer not making payment in full by the due date, the Buyer shall be charged and obliged to pay to the Company default interest/late payment charges at the rate of 2.5% per month on the principal amount due from the due date of payment to the date of actual full payment of the principal, without prejudice to the Company's right to claim full payment forthwith. The Buyer hereby agrees and accepts that the quantum of the default interest/late payment charges as calculated hereinabove in this sub-clause, is not a penalty, but constitutes the agreed damages suffered by the Company as a result of the latter being deprived of the timely payment of the principal amount (inclusive of, but not limited to, the element of interest), without prejudice to all other rights and entitlements of the Company under these Conditions or under the applicable Law or otherwise. In the event that the aforesaid contractually agreed rate of default interest/late payment charges  is in excess of that permitted by any applicable Law, it shall be substituted by the maximum rate so permitted.
5. Payment will be made by way of telegraphic, telex, swift or rapid electronic transfer to the bank and account  specified in the Bunker Nomination and/or Invoice.  All bank and other charges, if any, incurred in effecting remittance will be for the account of the Buyer Advice of remittance including identifying references should always be given to the Company.
6. Payments received by the Company from or on the behalf of the Buyer notwithstanding any specific request to the contrary will be applied in the following order in diminution or extinction of :
    1. accrued financial and other charges in respect of transactions for which the principal sum has been previously paid.
    2. accrued financial and other charges arising from all other transactions.
    3. any principal sum or sums due and outstanding commencing with the oldest and proceeding chronologically thereafter to the most recent.
    4. any principal sum which the Company knows or reasonably expects will fall due at a future date.
7. The Company may in good faith vary, amend, withdraw, substitute or add to the terms relating to payment at any time in the course of a transaction in such manner as it shall in its absolute discretion consider necessary to protect its interests.
8. If at any time the reputation, standing, creditworthiness, liquidity or solvency of the Buyer or any principal manager, subsidiary , parent, associate or affiliate of the Buyer should give the Company reasonable cause for concern, the Company may, without prejudice to all other rights and remedies which it may have, give notice to the Buyer that credit facilities from the Company to the Buyer are withdrawn or suspended as the case may be and all sums outstanding shall thereupon fall due for

immediate payment irrespective of any other Due Date previously agreed. Financial charges per Clause 12.01.1 shall incur from the date of the relevant notice being tendered to the Buyer.

9. In the event that the Buyer or any subsidiary or parent thereof shall commit an act of bankruptcy or shall be the subject of proceedings judicial or otherwise commenced for debt, bankruptcy, insolvency, liquidation or winding up, the Company may forthwith terminate any Agreement with the Buyer and/or all credit arrangements in the lines of 12.01.8 above.

10. The full legal and other costs and expenses incurred by the Company including those of the Company's own legal department and of other lawyers it may employ in connection with any breach by the Buyer of any term of the Agreement including but not limited to actions for security or enforcement as well as preaction costs shall be for the Buyer's account, payable by the Buyer and shall for all purposes form part of the Price due from the Buyer to the Company for the Product supplied.

## 13.00   CLAIMS, DISPUTES AND PRECAUTIONS

13.01   **Time Limits:** Because the Company is frequently placed under strict time limits by its suppliers for the presentation of claims it is necessary that it too must impose rigid time limits on receiving notice of claims from its Buyers.  In consequence of the Company's strict time limits, Buyers should ensure that they maintain their own equally strict internal checking and reporting procedures.  It must be clearly understood that the Company will not relax its time-limits in any circumstances.

13.02   **Notification:**  Written notice of any claim or potential claim must be given to the Company within the time limit specified.  It is the Buyer's responsibility to ensure that notice is received by the Company whose confirmation of receipt should always be sought.  Regardless of whether a claim or dispute has arisen or is anticipated the Buyer must always give prompt notice to the Company of any discrepancy, error or omission present in any form or document tendered, submitted or produced by the Physical Supplier and of any unusual occurrence relating to the Delivery.

13.03   **Sufficiency of Information:**      To enable the Company to investigate and pursue a claim the notice must be give sufficient information for the Company to be able to identify the relevant transaction , the nature of the complaint and the loss or damage alleged.  Any notice which does not give such sufficient information will not be valid.  For the same reasons the Buyer must provide a full and complete response to any and all questions, enquiries and requests made of it by the Company concerning the claim and matters relating thereto.

13.04   **Categories:**      Claims fall into 3 categories:
1. Quantity claims and disputes
2. Quality claims and disputes
3. Other claims and disputes

1.01   **Quantity Claims and Disputes:** These are most easily avoided by ensuring high standards of checking before, during and after Delivery by an officer of the Vessel's crew or other senior representative of the Buyer.

1.02      For bulk deliveries, delivery barges, wagons and vehicles must be checked by tank-dipping to measure the contents and ensure full out-turn.  Flow meters must be checked for seals, correct settings and calibration and general condition.  All of these checks must be carried out before and after delivery of each consignment and each barge, wagon or vehicle tank load.  The Delivery must be supervised by the Buyer at all times and care must be taken in ensuring that all documentation is complete and accurate before signing and stamping.  Any such discrepancies must be recorded on the Physical Supplier's delivery receipt.  Unless these procedures are followed it is nearly always impossible for a claim to be substantiated.  The Company regrets therefore that it will be obliged to reject claims for short delivery where these receiving procedures are not followed.

1.03      The Company will not accept a claim for short delivery based upon figures obtained by measuring the Product in the Vessel's tank.

1.04      The time limit for receipt by the Company of a notice of a quantity dispute is 7 (seven) running days from the  date of Delivery or such shorter period as is specified in the Bunker Nomination.

2.01      **Quality Claims and Disputes.** It is the Buyer's responsibility to ensure that the Product tendered for Delivery is that which isrequired by the Vessel and is delivered into the correct tanks.

2.02      Three(3)  representative samples of every Product consignment   must be taken as Delivery proceeds at barge's or orther delivery mean's manifold by dripping method.  The samples must be signed and sealed by a representative of the Physical Supplier and by an officer of the Vessel or other representative of the Buyer.  One set of samples must be retained by the Buyer, the other by the Physical Supplier and the third for Marpol.

2.03      As with quantity claims it is important to check that all documentation is in order and to note discrepancies on the Physical Supplier's delivery receipt before signing and stamping.

2.04      In the event of the Buyer having grounds to believe that the Product supplied does not accord with the relevant description in the Nomination Confirmation or is defective, the Buyer shall immediately:

1. take all reasonable steps to mitigate the consequences of having been supplied with possibly defective or incorrect Product; and
2. give notice with full details of the possibly defective or incorrect Product to the Company together with the Vessel's position destination and ETA; the quantities and locations of all bunkers on board the Vessel, the rate and quantity of consumption since Delivery and the location immediately prior to consumption of the Product consumed; for each of the three proceeding deliveries to the Vessel, the quantity, quality and



Worldwide Marine Oil Suppliers

---

**GENERAL TERMS AND CONDITIONS FOR THE SALE OF MARINE BUNKER FUELS AND LUBRICANTS**

---

<u>EFFECTIVE FROM DECEMBER 29TH 2017</u>

1.00 **INTRODUCTORY** These terms and conditions, which can be found also at www.praxisenergyagents.com are the general standard terms and conditions under which each of the companies stated in the Schedule below (each one hereinafter referred to herein as the "Company" is prepared to enter agreement (the "Agreement") with another party (the "Buyer") to supply to the Buyer marine bunkers, and/or lubricants and/or other products. These terms and conditions are referred to herebelow as "these Conditions". Each Agreement for the sale of Products (as hereinafter defined) shall be governed by the specific terms negotiated and agreed between the Company and the Buyer as evidenced by the Company's nomination confirmation  sent by facsimile or e-mail message (the "Nomination Confirmation") and by these Conditions; in the event of any conflict between these Conditions and the terms of the Nomination Confirmation, the terms of the latter shall prevail.

2.00 **DEFINITIONS**
2.01 **Agreement**  As defined in Clause 1.00 above.
2.02 **Basic Cost**  The basic cost of Product calculated by multiplying the Unit Price by the quantity of Product delivered to the Vessel.
2.03 **Nomination Confirmation**  As defined in clause 1.00 above.  The Nomination Confirmation dispatched by the Company prior to delivery and not contested in writing by the Buyer clearly before the delivery of the Product to the Vessel, shall be conclusive evidence, among others, of (i) the order for the Product placed by the Buyer, (ii) the identity of the Buyer and (iii) the price and other details of the delivery of the Product. All the party(ies) stated in the relevant Bunker Nomination as buyer(s) shall be deemed to be the Buyer of the respective Product on a joint and several basis, without prejudice to the other terms and conditions of this Agreement.
2.04 **Buyer**  Jointly and severally, in any event the registered and the disponent owner of the Vessel, including any lessor and (as the case may be) the manager of the Vessel, her demise/bareboat charterer, lessee and any other party which has contracted with the Company for the particular supply of Product and is stated as a buyer in the Nomination Confirmation. The manager of a Vessel shall, unless it otherwise expressly advises the Company in writing before the latter despatches its Nomination Confirmation, be deemed as acting for the owner of the Vessel and on its own behalf, on a joint and several basis.
2.05 **Company**  Includes in addition to the Company itself, its servants, agents, assigns, sub contractors, and any and all other persons acting under the Company's instructions in fulfilment, compliance or observance of this Agreement, unless the context otherwise requires.
2.06 **Delivery**  As defined in Clause 8.00 below.
2.07 **Due Date**  The date specified in the Nomination Confirmation for payment of the Price and all other fees, costs, charges and like items.
2.08 **Gender, Singular and Plural**  Unless the context otherwise requires, all references in these Conditions  to one gender shall be deemed to include all others and references to the singular shall be deemed to include the plural vice versa.
2.09 **Physical Supplier**  The party which physically supplies the Product to the Vessel together with that party's servants, agents, successors, sub-contractors and assigns.  The Physical Supplier may be the Company or any other party whatsoever.
2.10 **Port of Supply**  The port or other readily identifiable geographical location specified in the Nomination Confirmation wherein or adjacent to which is the Point of Delivery.
2.11 **Point of Delivery**  The precise place at which Delivery is to be effected as provided  in the Nomination Confirmation or as thereafter confirmed, advised or revised by the Company or the Physical Supplier being a berth, mooring, anchorage or other point within, adjacent to or associated with the Port of Supply.
2.12 **Price**  As defined in Clause 11.00 below.
2.13 **Product**  The fuels, bunkers, oils, lubricants, goods, items, equipment  and materials of whatever type and description as specified in the Nomination Confirmation.
2.14 **Unit Price**  The rate of cost in United States Dollars (or such other currency as expressly specified in the Nomination Confirmation) per metric tonne (or such other unit of measurement as expressly specified in the Nomination Confirmation) or Product as specified in the Nomination Confirmation.
2.15 **Vessel**  The vessel, ship or craft duly nominated to receive Product as specified in the Nomination Confirmation.
2.16 **Written, in Writing and Notice**  Any requirement for written communication including the giving of any notice may be fulfilled by the use of letter-post, courier,  facsimile transmission or any other medium which produces a tangible result for the intended recipient.  The communication shall be deemed to have been given and received upon completion of transmission for any electrical or electronic medium, within two working days of dispatch for first class inland letter-post, within five working days of dispatch for second class inland letter-post and air mail and on the expiry of the declared or guaranteed time for delivery of any courier or monitored service.

3.00     **HEADINGS**  The use of headings and explanatory notes is for convenience and elucidation only.

4.00     **ENTIRETY AND VALIDITY**  These Conditions together with the Nomination Confirmation constitute the entire Agreement.  No derogation, addition or amendment to the Agreement shall be of any force or effect unless and until expressly confirmed in writing by the Company.  If any provision of the Agreement shall to any extent  be invalid or unenforceable  the remainder of the terms of the Agreement shall not be affected thereby.

5.00     **FORCE MAJEURE**  The Company shall not be liable for any failure to fulfil any term or condition of the Agreement if fulfilment has been delayed, hindered or prevented by any circumstances whatsoever which are not within the immediate control of the Company including but without limiting the generality of the foregoing, any strike, lockout or labour dispute or reasonable apprehension thereof, any governmental order, request or restriction, any limitation restriction or interruption to existing or contemplated sources of  supply of Product or the means of supply thereof.

6.00     **BROKERS AND AGENTS**
6.01     Unless the party with whom the Company is corresponding specifically declares to the Company prior to dispatch by the Company of the Nomination Confirmation that the party with whom the Company is corresponding is not the Buyer and at the same time provides to the Company the full name and address of the Buyer, then the party with whom the Company is corresponding shall be deemed to be the Buyer.
6.02     Without prejudice to the provisions of clause 6.01 in the event that the party with whom the Company is corresponding is an agent of the Buyer, then the party with whom the Company is corresponding shall be jointly and severably liable with the Buyer to perform all the Buyer's obligations under the Agreement notwithstanding that the party with whom the Company is corresponding purports to contract as a mere agent.
6.03     In any event the registered and disponent Owners and the Managers of the Vessel shall always be responsible jointly and severally with any other liable party.

7.00     **ASSINGMENT**  The Buyer shall not assign its interest (rights and/or obligations) in the Agreement without the prior express written approval of the Company.  The Company may assign its rights and/or obligations under the Agreement and shall thereafter give notice thereof to the Buyer in writing.

8.00     **DELIVERY**
8.01     **Allocation**  If the Company at any time and for any reason, believes that there may be a shortage of Product at the Port of Supply it may allocate its available and anticipated supply of Product among its Buyers in such a manner as it may in its absolute discretion determine.
8.02     **Restrictions**  The Company shall not be required to deliver Product into any of the Vessel's tanks or other places which are not regularly used for storage of bunkers or lubricants or other products as the case may be and shall not be required to deliver any Product for the export of which a Government permit is required and has not been obtained by the Buyer.
8.03     **Means of the Delivery**  Delivery shall be effected in one or more consignments at the Point of Delivery by such means as the Company shall deem appropriate in the circumstances.
8.04     **Barging**  In the event of delivery by barge, the Buyer shall at its own expense provide a clear and safe berth for the barge(s) alongside the Vessel's receiving lines and shall provide all necessary facilities and assistance required to effect delivery.  The Buyer agrees to pay and fully indemnify the Company against all claims and expenses in respect of any loss, damage or delay caused by the Vessel to any barge and/or its equipment.
8.05     **Connection**  The Buyer shall make connection between the pipelines or delivery hoses and the Vessel's intake line and shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly each and every consignment of the Delivery.  The Buyer is responsible for ensuring that the Product  is delivered at a safe rate and pressure and that all equipment utilised therefor is in a safe and satisfactory condition.
8.06     **Title/Retention of Ownership**  Delivery shall be deemed complete when the Product has passed the flange connecting the Physical Supplier's delivery facilities with the receiving facilities provided by the Buyer.  However, the ownership of the Product  shall pass to the Buyer only after the Price has been received by the Company in full as provided in Clause 12.01.  Until such time as the Price  is received in full by the Company, the person in possession of the Product delivered shall hold the Product for the Company as a mere bailee, without charging any charges whatsoever to the Company and store it in such way so that it can be identified as the Company's property; the Product shall remain on the Vessel at Buyer's sole risk and expense.
8.07     **Risk**  The Company's responsibility for the Product shall cease and the Buyer shall assume all risks and liabilities relating thereto, including loss, damage, deterioration, depreciation, contamination, evaporation or shrinkage of Product and responsibility for loss, damage and harm caused by pollution or in any other manner to third parties at the time Product leaves the Physical Supplier's fixed depot or wharf  facilities.  The Buyer agrees to fully indemnify without limit the Company in respect of any liability, claim or demand for which the Buyer is liable.
8.08     **Measurement**  The quantity of the Product delivered hereunder shall be determined at the Physical Supplier's option by one of such generally recognised methods of measurement as is appropriate in the circumstances.
8.09     **Specification**  The Product to be delivered shall be as specified in the Nomination Confirmation and other than as more precisely specified therein shall be of the Company's commercial grades of Product as currently offered generally to its Buyers at the time and the Point of Delivery for marine bunkering or lubrication purposes. No other warranties, express or implied, as to the quality or the fitness of the Product for any purpose, are given or form part of the Agreement.

**8.10     Compatibility and Segregation** Responsibility for establishing compatibility of the Product delivered with any other product or products and for segregating or co-mingling the same rests solely with the Buyer.

**8.11     Substitution** The Company may discharge its obligation to deliver Product as specified in the Nomination Confirmation by supplying in substitution therefor product of a different grade and/or brand name provided always that such substitute product is of an equivalent or superior specification to that specified in the Nomination Confirmation.

**8.12     Availability** Subject to the availability of Product, the availability of facilities at the Port of Supply and Point of Delivery and the customary priority of mail vessels and tankers, and to the Buyer giving notice in accordance with Clause 8.15, the Company will use its best endeavours to ensure that the Product is delivered promptly upon the Vessel's arrival but the Company shall not be responsible for any loss, expense, damage or increased costs incurred in consequence of the Vessel not being supplied promptly or otherwise being delayed or restrained for any reason whatsoever.

**8.13     Time** The Buyer is responsible for ensuring that the Vessel is ready to receive the Product at the Point of Delivery on the expiry of the notice given in accordance with Clause 8.15.

**8.14     Delay** In the event that the Vessel's arrival at the Point of Delivery is delayed or likely to be delayed the Buyer must so advise the Company without delay. The Buyer should also ensure that the Vessel's agent at the Port of Supply is similarly informed and that the agent advises the Physical Supplier accordingly and without delay. At the Buyer's request the Company will use its best endeavours to supply a delayed Vessel on the terms originally agreed but reserves the right to pass on to the Buyer all additional costs including increased Basic Cost arising from the Vessel's delayed arrival.

**8.15     Notice and Other Delivery Requirements** The Buyer must give not less than 72 hours notice (excluding Saturdays, Sundays, holidays and other non-working days at the Port of Supply) of the Vessel's readiness to receive Product to the Company and to the Physical Supplier. Notice must be given during the Company's normal business hours (Monday to Friday inclusive, 0900-1700 Local time). Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter. Furthermore it is in all circumstances and on all occasions the responsibility and duty of the Buyer to ascertain and where appropriate to comply with:

1. the precise requirements of the Physical Supplier and any other person, body or authority in respect of the giving of notice of the Vessel's time of arrival at the Point of Delivery.
2. the exact location of the Point of Delivery
3. any particular requirements to enable Delivery to be effected as efficaciously as possible

The Buyer is advised to instruct its agent at the Port of Supply to liaise with the Physical Supplier so as to ensure compliance with these provisions.

**8.16     Information** In response to a specific request for information from the Buyer in respect of the Point of Delivery the Company will use its best endeavours to obtain or provide the information requested. Whilst every care will be taken to ensure that such information is accurate and up-to-date it is furnished on the strict understanding that It is not a contractual representation and that no responsibility whatsoever will attach to the Company for its accuracy and veracity.

**8.17     Environmental Protection** Without prejudice to Clause 8.07 the Company may at any time without notice take any steps which it considers necessary to protect the environment from damage arising from spillage or transport of Product. Any action so taken shall be on behalf of and at the expense of the Buyer.

**9.00     CANCELLATION AND BREACH** In the event of the Buyer at any time cancelling a request for Product or the Vessel failing to take delivery of part or all of the requested Product the Company shall have the right to pursue a claim against both the Buyer and the Vessel for all loss and damage thereby suffered including loss of profit. The Company may treat any other breach by the Buyer of any express term of the Agreement as a breach of a condition and it may at its discretion thereupon accept the breach, treat the Agreement as repudiated and seek such remedies as it considers appropriate. So however that the provisions of Clauses 15.01,16.01 and 17.01 shall survive the determination of the Agreement in any event.

**10.00     MARITIME LIEN** Where Products are supplied to a Vessel, in addition to any other security, the agreement is entered into and the Products are supplied upon the faith and credit of the Vessel. It is agreed and acknowledged that the sale of Products to the Buyer and/or their acceptance on the Vessel create a maritime lien over the Vessel for the price of the Products, such maritime lien afforded to the Company over the Vessel. In any event any applicable Law shall not prejudice the right of the maritime lien of the Company afforded hereunder or by any other applicable Law, be it of the place of delivery, of the flag of the Vessel, of the place of jurisdiction, and/or of an arrest of the Vessel, or otherwise howsoever. In case the Buyer is not the owner of the Vessel, it hereby expressly warrants that it has the authority of the owner to pledge the Vessel's credit and create a lien upon her as aforesaid and that he has given notice of the provisions of this Clause to the owner. The Company shall not be bound by any attempt by any person to restrict, limit or prohibit its lien or liens attaching to a Vessel, either by clausing the Physical Supplier's delivery receipts or otherwise.

**11.00     THE PRICE**

**11.01     Unit Price** Where in the Nomination Confirmation the Unit Price is stated to be not subject to variation the Unit Price will, subject to clause 8.14, not be varied. In all other cases having agreed the Unit Price of the Product the Company will endeavour to refrain from making any increase. However , the cost of marine bunkering products is volatile and the Company therefore reserves the right to increase the Unit Price at any time before delivery. Notice of the increase will be given during the Company's normal business hours (Monday to Friday inclusive,

0900-1700 Local time).  Notice given outside these hours will be deemed to have been given at 0900 on the first business day thereafter.  In such event the Buyer may forthwith give written notice to the Company of cancellation of the Agreement.  If no such notice is received within one hour of the Company advising the Buyer of the increase of the Unit Cost the Buyer shall be deemed  to have agreed to the revised Unit price and the Agreement so revised shall remain in full force and effect.

11.02   **Further Costs**  In addition to the Basic Cost  of the Product the Buyer agrees to pay for any charges raised in respect of taxes of any kind, freight, barge, vehicle, wagon or clean up costs including overtime or other like payments; insurance; pilotage; port dues  and any and all other like costs and expenses incurred by or charged to the Company.  Such charges, costs and expenses will be passed on to the Buyer at the rates charged to the Company as and when they are advised to the Company and together with the Basic Cost shall for all purposes constitute the Price due from the Buyer to the Company for the Product supplied.

The contracted prices are duty free only on the basis that the nominated vessel previous and next port of call are outside of the country; If the vessel calls an additional internal port prior to or after bunkering the prices will be adjusted substantially higher to cover the applicable duty;

11.03   **Notice of the price**  The Company will give notice of the Price to the Buyer as soon as reasonably practicable after Delivery.  In certain circumstances the Company will give notice of the Price in instalments. Where notification of the Price is given in instalments each element of the Price so notified shall when due constitute an enforceable debt due from the Buyer to the Company.  Notice of the Price may at the Company's option be provided by invoice sent by post or telex or as otherwise provided herein or as agreed.

11.04   **Proof of delivery**  The Buyer or its representative should attend Delivery and obtain at that time all outstanding information relating to Delivery including the exact quantities and precise specification of the Product delivered.  Unless otherwise requested by the Buyer prior to despatch by the  Company of the Nomination Confirmation the Company shall be under no obligation at any time to produce to the Buyer any evidence of delivery to the Vessel.  It is expressly agreed that the furnishing by the Company of proof of Delivery is not a pre-requisite to payment of the Price.

12.01   **PAYMENT**    In most cases special payment terms will have been agreed and will be set  out in the Nomination Confirmation.  Each of the following terms apply unless the Nomination Confirmation otherwise provides:

1. Payment of  the Price will be made in United States dollars to the bank and account specified in the Nomination Confirmation or the Company's Invoice ("Invoice") in full without deduction for any reason whatsoever so as to ensure that the Company receives  value for the payment in cleared funds on or before the Due Date or such earlier date in the case of Clause 12.01.8.
2. The Due Date is as provided in the Nomination Confirmation.
3. Timely payment is of the essence of the Agreement.
4. In the event of the Buyer not making payment in full by the due date, the Buyer shall be charged and obliged to pay to the Company default interest/late payment charges at the rate of 2.5% per month on the principal amount due from the due date of payment to the date of actual full payment of the principal, without prejudice to the Company's right to claim full payment forthwith. The Buyer hereby agrees and accepts that the quantum of the default interest/late payment charges as calculated hereinabove in this sub-clause, is not a penalty, but constitutes the agreed damages suffered by the Company as a result of the latter being deprived of the timely payment of the principal amount (inclusive of, but not limited to, the element of interest), without prejudice to all other rights and entitlements of the Company under these Conditions or under the applicable Law or otherwise. In the event that the aforesaid contractually agreed rate of default interest/late payment charges  is in excess of that permitted by any applicable Law, it shall be substituted by the maximum rate so permitted.
5. Payment will be made by way of telegraphic, telex, swift or rapid electronic transfer to the bank and account  specified in the Bunker Nomination and/or Invoice.  All bank and other charges, if any, incurred in effecting remittance will be for the account of the Buyer Advice of remittance including identifying references should always be given to the Company.
6. Payments received by the Company from or on the behalf of the Buyer notwithstanding any specific request to the contrary will be applied in the following order in diminution or extinction of :
    1. accrued financial and other charges in respect of transactions for which the principal sum has been previously paid.
    2. accrued financial and other charges arising from all other transactions.
    3. any principal sum or sums due and outstanding commencing with the oldest and proceeding chronologically thereafter to the most recent.
    4. any principal sum which the Company knows or reasonably expects will fall due at a future date.
7. The Company may in good faith vary, amend, withdraw, substitute or add to the terms relating to payment at any time in the course of a transaction in such manner as it shall in its absolute discretion consider necessary to protect its interests.
8. If at any time the reputation, standing, creditworthiness, liquidity or solvency of the Buyer or any principal manager, subsidiary , parent, associate or affiliate of the Buyer should give the Company reasonable cause for concern, the Company may, without prejudice to all other rights and remedies which it may have, give notice to the Buyer that credit facilities from the Company to the Buyer are withdrawn or suspended as the case may be and all sums outstanding shall thereupon fall due for

immediate payment irrespective of any other Due Date previously agreed. Financial charges per Clause 12.01.1 shall incur from the date of the relevant notice being tendered to the Buyer.

9. In the event that the Buyer or any subsidiary or parent thereof shall commit an act of bankruptcy or shall be the subject of proceedings judicial or otherwise commenced for debt, bankruptcy, insolvency, liquidation or winding up, the Company may forthwith terminate any Agreement with the Buyer and/or all credit arrangements in the lines of 12.01.8 above.

10. The full legal and other costs and expenses incurred by the Company including those of the Company's own legal department and of other lawyers it may employ in connection with any breach by the Buyer of any term of the Agreement including but not limited to actions for security or enforcement as well as preaction costs shall be for the Buyer's account, payable by the Buyer and shall for all purposes form part of the Price due from the Buyer to the Company for the Product supplied.

## 13.00  CLAIMS, DISPUTES AND PRECAUTIONS

13.01  **Time Limits:** Because the Company is frequently placed under strict time limits by its suppliers for the presentation of claims it is necessary that it too must impose rigid time limits on receiving notice of claims from its Buyers.  In consequence of the Company's strict time limits, Buyers should ensure that they maintain their own equally strict internal checking and reporting procedures.  It must be clearly understood that the Company will not relax its time-limits in any circumstances.

13.02  **Notification:**  Written notice of any claim or potential claim must be given to the Company within the time limit specified.  It is the Buyer's responsibility to ensure that notice is received by the Company whose confirmation of receipt should always be sought.  Regardless of whether a claim or dispute has arisen or is anticipated the Buyer must always give prompt notice to the Company of any discrepancy, error or omission present in any form or document tendered, submitted or produced by the Physical Supplier and of any unusual occurrence relating to the Delivery.

13.03  **Sufficiency of Information:**   To enable the Company to investigate and pursue a claim the notice must be give sufficient information for the Company to be able to identify the relevant transaction , the nature of the complaint and the loss or damage alleged.  Any notice which does not give such sufficient information will not be valid.  For the same reasons the Buyer must provide a full and complete response to any and all questions, enquiries and requests made of it by the Company concerning the claim and matters relating thereto.

13.04  **Categories:**  Claims fall into 3 categories:

1.  Quantity claims and disputes
2.  Quality claims and disputes
3.  Other claims and disputes

1.01  **Quantity Claims and Disputes:** These are most easily avoided by ensuring high standards of checking before, during and after Delivery by an officer of the Vessel's crew or other senior representative of the Buyer.

1.02  For bulk deliveries, delivery barges, wagons and vehicles must be checked by tank-dipping to measure the contents and ensure full out-turn.  Flow meters must be checked for seals, correct settings and calibration and general condition.  All of these checks must be carried out before and after delivery of each consignment and each barge, wagon or vehicle tank load.  The Delivery must be supervised by the Buyer at all times and care must be taken in ensuring that all documentation is complete and accurate before signing and stamping.  Any such discrepancies must be recorded on the Physical Supplier's delivery receipt.   Unless these procedures are followed it is nearly always impossible for a claim to be substantiated.  The Company regrets therefore that it will be obliged to reject claims for short delivery where these receiving procedures are not followed.

1.03  The Company will not accept a claim for short delivery based upon figures obtained by measuring the Product in the Vessel's tank.

1.04  The time limit for receipt by the Company of a notice of a quantity dispute is 7 (seven) running days from the  date of Delivery or such shorter period as is specified in the Bunker Nomination.

2.01  **Quality Claims and Disputes.** It is the Buyer's responsibility to ensure that the Product tendered for Delivery is that which isrequired by the Vessel and is delivered into the correct tanks.

2.02  Three(3)  representative samples of every Product consignment  must be taken as Delivery proceeds at barge's or orther delivery mean's manifold by dripping method.  The samples must be signed and sealed by a representative of the Physical Supplier and by an officer of the Vessel or other representative of the Buyer.  One set of samples must be retained by the Buyer, the other by the Physical Supplier and the third for Marpol.

2.03   As with quantity claims it is important to check that all documentation is in order and to note discrepancies on the Physical Supplier's delivery receipt before signing and stamping.

2.04   In the event of the Buyer having grounds to believe that the Product supplied does not accord with the relevant description in the Nomination Confirmation or is defective, the Buyer shall immediately:

1.  take all reasonable steps to mitigate the consequences of having been supplied with possibly defective or incorrect Product; and
2.  give notice with full details of the possibly defective or incorrect Product to the Company together with the Vessel's position destination and ETA; the quantities and locations of all bunkers on board the Vessel, the rate and quantity of consumption since Delivery and the location immediately prior to consumption of the Product consumed; for each of the three proceeding deliveries to the Vessel, the quantity, quality and

specification of bunkers supplied, the port and date of supply and the name of the supplier; and

3. inform the Company of the whereabouts of the Buyer's set of samples.

2.05    It is a pre-condition of the Company being prepared to consider any quality claim and of the Company being liable therefor, that at the time notice is given, the Buyer has retained its complete set of sealed samples and is prepared to and has them analysed by a reputable independent testing laboratory, approved in writing by the Company, in accordance with established procedures and in the presence of a representative of the Company.  In the event that the Buyer is unable or unwilling to produce its samples for analysis within 28 days of a request from the Company to do so, the Company may proceed to have the Physical Supplier's samples analysed and the results of such analysis shall be binding upon the parties hereto.  However, if the analysis of any other samples is expressly agreed between the parties, the results thereof shall be those binding.

2.06    If it is alleged that any equipment or machinery has been damaged by defective Product full details must be given  to the Company at the earliest opportunity and the item must be preserved and made available for inspection on demand at any reasonable time or times to the Company or its representative.

2.07    The time limit for receipt by the Company of notice of a quality claim is 7(seven) running days from the date  of Delivery or such shorter period as is specified in the Nomination Confirmation.

3.01    **Other Claims and Disputes:** Notice of all other claims, specifically excluding any and all claims relating to or associated with those relating to matters of quantity or quality which are subject to the time limits set out in sub-clauses 13.04.1 and 13.04.2 above, should be given to the Company as soon as reasonably possible and in any event  no later than 28 running days after Delivery.  If the Bunker Nomination Confirmation provides for a shorter period such shorter period shall apply.

4.01    **Summary of Time Limits:**
Quantity claims and disputes 7 running days
Quality claims and disputes  7 running days
Other claims and disputes 28 running days
all subject to the provision of shorter time limits in the Bunker Nomination.


**14.00   WAIVER**   The failure by any party to the Agreement to enforce any right against any other party shall not be construed as a waiver of that right or in any way affect the validity of the Agreement.  In particular, the granting by the Company of any additional time to make payment or the waiving or reducing of any financial or other charge shall not prevent the Company at any time thereafter from relying upon its strict contractual rights.


**15.00   INDEMNITY**   The Buyer hereby indemnifies the Company in respect of all damage or injury occurring to any person or to any property and against all actions, suits, claims, demands, costs, charges or expenses arising in connection therewith to the extent that the same shall have been occasioned by the negligence or default of the Buyer, its servants or agents or any third party in the course of  performance of or arising out of the Agreement.


**16.00  LIABILITY-LIMITATION TO THE COMPANY'S LIABILITY**    Without prejudice to any other provision in these Conditions:

16.01    Under no circumstances shall the Company or its servants, subcontractors and/or agents be liable for any physical injury or damage, including but without limitation for the consequences of any damage to the Vessel's machinery or equipment caused by the Products which do not correspond to the description ordered by the Buyer.

16.02   The Buyer shall be solely liable for making the hose connections on board the Vessel and generally to accept the Products on board; therefore the liability for any loss or spillage of Products overboard the Vessel shall be solely with the Buyer, the Company or the Physical Supplier not having any liability whatsoever.

16.03   The Company shall, under no circumstances, be liable for loss of hire, income and/or profit or any consequential damages of the Buyer. Where the Company is liable for any delay caused to the Vessel, its liability shall be limited to the proven actual running costs of the Vessel for the period of any such delay (exclusive of any loan/finance servicing costs in relation to the Vessel and/or any other expenses not directly connected to the actual running of the Vessel). Where Products are proven to be off-specifications to the extend of not being able to be used in the Vessel and the Company is liable, the liability of the latter in respect of the value of the replacement product cannot exceed the price of the Products replaced as invoiced by the Company.

16.04    The Company shall not be liable for negligence on the part of its employees, servants and/or agents or on the part of the Physical Supplier and/or its employees, servants and/or agents.

16.05    The Company's liability for any claim whatsoever, whether based in tort or contract, shall be limited to the value of the Products as set out in the Company's Invoice for the particular transaction.

16.06    The Physical Supplier and the employees, representatives, subcontractors, servants and/or agents of the Physical Supplier and/or the Company shall enjoy the benefit of all rights afforded to the Company under these Conditions.


**17.00   COMPENSATION**  Notwithstanding  the foregoing, in the event that the Company is found to be liable to the Buyer , the total amount payable by way of compensation other than in respect of personal injury or death shall not exceed the price charged to the Buyer for the Product supplied under the Agreement.  It is a pre-condition to the payment of any compensation by the Company that all sums standing due to the Company from the Buyer are first paid and settled.

18.00   **INSURANCE**   The Buyer is responsible for effecting and maintaining in force adequate insurances  which will fully protect the Buyer, the Company and all third parties from all risks, hazards and perils associated with or arising from the Agreement and Delivery.

19.00   **LICENCES PERMITS AND APROVALS**   The Buyer is responsible for obtaining all necessary permits, licences and approvals required to enable both parties to execute all of their obligations under the Agreement.

20.00   **NO WARRANTY**
20.01   The Product shall be within the specifications generally offered to the Company's customers at the time and place of delivery.
20.02   The Company makes no warranties of quality (other than what is expressly mentioned herein above) fitness or merchantability with respect to any of the Products and any implied warranties or conditions of whatsoever nature  (statutory included) are expressly excluded.
20.03   The Buyer shall have the sole responsibility to select suitable products for his vessel.

21.   **MISCELLANEOUS**
21.01   If any provision of these Conditions or the Agreement becomes or is found to be invalid, illegal or unenforceable in respect of any Law, the validity, legality and enforceability of the remaining provisions hereof shall in no way be affected or impaired.
21.02   It is mutually agreed that the Products provided by the Company to the Buyer under the terms of the Agreement have been ordered by the Buyer in the ordinary course of business between Company and Buyer. All payments from the Buyer to the Company for Products supplied under the Agreement are deemed to have been made in the ordinary course of business between the Company and the Buyer, according to these ordinary business terms agreed between them.

22.00   **LAW AND JURISDICTION**
22.01   These Conditions and the Agreement governed by them and/or to which they apply, as well as any disputes, differences, claims and/or other matters relevant hereto, shall be governed by the General Maritime Law of the United States of America.
22.02   Without prejudice to the provisions of clause 22.03 herebelow, any disputes and/or claims arising in connection with these Conditions and/or any agreement governed by them, shall be submitted to the United States District Court for the Southern District of New York.
22.03   For the sole benefit of the Seller, it is further agreed that the Seller, without prejudice to any of its rights, has the right to proceed against the Buyer and/or the Vessel and/or any other party in such jurisdiction worldwide as the Seller in its sole discretion sees fit, inter alia, for the purpose(s) of securing any payment due to it or proceeding in the main or any other proceedings in order to enforce and/or collect any claim or cause the issuance of any Court judgment whatsoever. The Buyer agrees and acknowledges that the nature of the transaction and of the respective business concerned is such, to the effect that the foregoing which are set for the benefit of the Seller, are absolutely reasonable and fully acceptable by the Buyer, which hereby confirms that it will also be liable for all costs of the Seller including but without limitation Attorneys' fees.
22.04   If any proceeding of any nature whatsoever is instituted under Clause 22.02 or 22.03 above, in connection with any controversy arising out of these Conditions or the Agreement or to interpret or enforce any rights under the Agreement, the prevailing party shall have the right to recover from the losing party its reasonable costs and attorneys' fees incurred in such proceeding.


**SCHEDULE** referred in clause 1.00

- PRAXIS ENERGY AGENTS DMCC of Dubai, United Arab Emirates
- PRAXIS ENERGY AGENTS (PTE) LTD. of Singapore
- PRAXIS ENERGY AGENTS LLC of Houston U.S.A.